IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jane Doe, | ) |
|       Plaintiff, | ) C.A. No. 6:21-cv-03416-DCC-KFM |
| v. | ) |
| Luxor Scientific, LLC and David List, | ) Plaintiff's Opposition to Defendant Luxor Scientific's Motion to Dismiss [DE 19] |
|       Defendants. | ) |

## I. Introduction

Plaintiff asserts ten claims against Defendants:

| Count – Claim | | Defendant(s) |
|---|---|---|
| I | Discrimination (harassment) under Title VII | Luxor Scientific |
| II | Retaliation – Title VII | Luxor Scientific |
| III | Assault | List |
| IV | Battery | List |
| V | Interference with Contract | List |
| VI | Intentional Infliction of Emotional Distress | List |
| VII | Invasion of Privacy | Luxor Scientific and List |
| VIII | Negligent Supervision/Gross Negligence | Luxor Scientific |
| IX | Negligent Retention and Gross Negligence | Luxor Scientific |
| X | Negligent Investigation and Gross Negligence | Luxor Scientific |

Luxor Scientific has moved to dismiss Count VII as against Luxor Scientific, as well as Counts VIII-X.

1

## II.  Summary of allegations

Plaintiff is young graduate from college who obtained employment with Luxor Scientific as her first job after graduation.  [Amended Complaint ¶ 4 (DE 14)].  David List is a middle-aged, married man, who serves as executive director for Luxor Scientific.  [*Id.* ¶ 5].  Plaintiff and other young females employed by Luxor Scientific[1] begin their sales careers with a stint as List's "executive assistant."[2]  [Id. ¶¶ 6, 119 [DE 14].

From the beginning, List would make inappropriate comments and suggestions to Plaintiff, and he employed several psychological tactics to lure or coerce her into a sexual relationship.  [*Id.* ¶¶ 7-8].  This included "gaslighting," [*id.* ¶ 8], repeated comments about how he controlled how much Plaintiff (and other subordinates) made [*id.* ¶ 10, 32], and displays of self-pity to seek attention [*id.* ¶ 11, 13].  List would repeatedly tell Plaintiff what her place and role was as his female subordinate, which he would describe variously as being to "appease him," to "entertain him," or, as he texted another young female and would say to Plaintiff, to "supplement" him.  [*Id.* ¶¶ 11-12, 35-36].  List also would comment to his female subordinates about their bodies while also expressing disgust towards women who do not meet his standards.  [*Id.* ¶¶ 29-30, 49-50].

---

[1]  Ignoring the allegations of the Complaint, Luxor Scientific portrays itself as a veritable Mom and Pop organization, calling itself a "small limited liability company."  [DE 19-1 at 1].  In fact, Luxor Scientific apparently operates controlled or subs*idi*ary corporations, and it was recently ranked 5th on the Fastest Growing Companies in South Carolina, a list of established companies with revenues of at least $100,000,000 in the past year.  [Amended Complaint ¶ 2 [DE 14].  Luxor Scientific just announced a major expansion in Greenville County for which it was awarded tax incentives.  [*Id.*]  As discussed in the fact section below, the revenues flowing to it and List have been massive.

[2]  Plaintiff is conducting discovery on the subject, but the young men hired into the same organization apparently do not have to serve as List's "executive assistant" or subjected to the harassment that appertains the position.

2

As for the intrusion (privacy claim), for example, List would try to become involved (as a participant) in Plaintiff's social life.  [*Id.* ¶ 16].  List grills his young female subordinates about their sexual history and sex lives, and he demeans their boyfriends and former boyfriends.  [*Id.* ¶¶ 43-46].

List would attempt both a "carrot" and a "stick" approach to breaking down Plaintiff's resistance.[3]  List made clear to Plaintiff (in writing no less) that he was "a catch."  [*Id.* ¶ 20].  List offered Plaintiff the "high end life," especially if she would move to the Keys with him where she "c[ould] stay as long as u contribute monetarily or become my wife."  [*Id.* ¶¶ 14-15].  List offers his young female subordinates to become, as he calls it, their "work sugar daddy."  [*Id.* ¶ 17].  To back up his offers, List repeatedly boasts that Luxor Scientific pays him such sums as "6 figures every month," "5000 a day," and "650 an hour," and that he would spend some of that on them.  [*Id.* ¶ ¶ 17-18].

List would shower the young women with gifts, even when they questioned the appropriateness of them.  [*Id.* ¶¶ 19-20, 25].  There were, of course conditions and expectations on List's part.  List texted Plaintiff for example, that "I will make millions and I don't care to spend so u are in during the right time if u adhere to my shit."  [*Id.* ¶ 21].

To further show what a "catch" he is, List likes to tout his physical "assets" [*id.* ¶ 48], and he also offers his sexual prowess as a carrot.  List texted Plaintiff, for example, about his willingness to "stimulat[e] pussy with my tongue," and he commented that "girls

---

[3]  One of List's most bizarre efforts was to juxtapose how good he could make life for compliant women was to show them how miserable he could make life for women who d*id* not "entertain" him, "appease" him, or "adhere to [his] shit."  For example, List invites his young female subordinates to his house when his wife is not home.  [*Id.* ¶ 25].  He made clear to them how expendable she is by repeatedly complaining about how bad his life is and even repeated by making repeated references to her as a "hemorrhoid," as a "bitch," and as a "cunt from hell."  [*Id.* ¶¶ 42, 49].

3

your age don't have orgasmic action [because] the guys suck and are 1-5 minute finishers." [*Id.* ¶ 22]. List offered an alternative. With someone his age, he wrote, "u better lock in for three orgasms in 45 minutes." [*Id.*]

List's harassment was not limited to comments or texting. One evening, it escalated to a full-scale assault. [*Id.* ¶ 24].

When the carrots did not work, List turns to sticks. List would lash out at Plaintiff if she pushed back, even slightly, on his advances. For example, List arranged a "vacation" to the Keys (paid for by Luxor Scientific), and, at first, he told Plaintiff that he was inviting only her and another of his young female "executive assistant" that he had harassed. [*Id.* ¶¶ 27-28]. List also initially told Plaintiff that she would ride alone with him to and from the Keys. When Plaintiff declined, List went into a rage. [*Id.* ¶ 34]. List told Plaintiff that her resistance was "fucking stup*id*," [*id.* ¶ 39], and he made overt threats to Plaintiff, in writing, that her concern about being alone with him was a bad career move: "Are u sure you want to go down this road[?]" [*Id.* ¶ 35]. List added an explicit demand: "Until u don't need me u are going to entertain me." [*Id.*] List made clear that, by resisting, Plaintiff had "push[ed]" him to "pissed off," and that she "put [her]self in a precarious position . . . .NOT SMART." [*Id.* ¶ 38]. List also told her that the issue "would linger." [*Id.* ¶ 41]. In both a recorded phone call and in text messages that Plaintiff provided Luxor Scientific, List repeatedly reminded Plaintiff that she "needed" him. [*Id.* ¶ 35, 39]. To top it off, List demanded that Plaintiff apologize to him, and he chastised her for not being grateful enough to him. [*Id.* ¶¶ 39-40].

True to his word, when Plaintiff resisted all of List's tactics, he used his position to retaliate against Plaintiff and to affect her pay. [*Id.* ¶¶ 54-56].

4

Luxor Scientific knew of inappropriate actions by List. [*Id.* ¶ 53]. Plaintiff even provided Luxor Scientific with the text messages, a recording, and names of witnesses. At least one other young female prov*id*ed corroborating evidence and parallel accounts. [*Id.* ¶ 58, 60]. In response, Luxor Scientific stopped Plaintiff from communicating with business accounts she was trying to develop (affecting her pay), downplayed and whitewashed her allegations, relegated her to paperwork, and removed her from work-related emails. [*Id.* ¶ 60-62, 66-67, 69-70].

At the same time, Luxor Scientific determined that it wanted to continue to have List as the face of the company. So as not to imperil the massive cash flow Luxor Scientific was enjoying, List continued in his position without any apparent consequence. [*Id.* ¶ 63]. Luxor Scientific admonished Plaintiff not to discuss List's conduct with anyone (including other young females similarly situated). [*Id.* ¶ 59]. The seriousness with which Luxor Scientific viewed the above documented and recorded evidence is exemplified by the fact that it kept Plaintiff in limbo and simply ignored her for weeks until she finally was compelled to quit. [*Id.* ¶ 64, 68, 71].

### III. Argument

**A.    The Workers Compensation Act precludes only certain damages, not causes of action.**

The Court should note that, after whitewashing the underlying facts, Luxor Scientific ignores the allegations of harm specific to each claim it seeks to have dismissed. That is not an accident on Luxor Scientific's part. Luxor Scientific's attempt to direct attention away from the relief sought and to focus it solely on the name of a claim is unavailing under settled caselaw.

The Workers Compensation exclusivity principle does not bar causes of action. It only precludes efforts to recover for personal injuries.

> Recovery under the Act is the exclusive means of settling personal injury claims which come under the Act. However, only other actions arising from personal injury or death are barred.

*Loges v. Mack Trucks*, 308 S.C. 134, 136, 417 S.E.2d 538, 540 (1992) (citing *Doe v. S.C. State Hosp.*, 285 S.C. 183, 328 S.E.2d 652 (Ct. App. 1985)).[4] The personal injury limitation derives from the text of the South Carolina Workers Compensation Act ("WCA"):

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of **personal injury** . . ., shall exclude all other rights and remedies . . . on account of **such injury**, loss of service or death.

S.C. Code Ann. § 42-1-540 (emphasis added).

Because the statute is limited to "personal injury" claims, courts routinely recognize that "the exclusivity provisions do not bar suits for claims for which the Act provides no

---

[4]    *See also Edens v. Bellini*, 359 S.C. 433, 445, 597 S.E.2d 863, 869 (Ct. App. 2004) ("The exclusivity principle states that the South Carolina Workers Compensation Act provides the" sole remedy for work-related injuries.").

remedy." *Fotia v. Palmetto Beahvioral Health*, 317 F. Supp.2d 638, 645 n. 8 (D. S.C. 2004) (citations omitted); *Bowers v. Liberty Mut. Ins. Co.*, 9:03-cv-03305-PMD, Order of December 12, 2003 [DE 8] at 3 (claim against employer for failure to pay workers compensation benefits ordered by the Commission); *e.g.*, *Dockins v. Ingles Markets, Inc.*, 306 S.C. 287, 411 S.E.2d 437 (1991) ("*Dockins I*") (slander actions are not barred by the Act's exclusivity provision since the gravamen of a slander action is injury to one's reputation, but damages for emotional injuries are within the WCA).[5]

Thus, while claims in some cases may be dismissed because the relief sought involves personal injury, those same causes of action will survive elsewhere when the remedy sought is non-personal. *E.g.*, *Frasier v. Verizon Wireless*, No. 8:08-356-HMH, 2008 U.S. Dist. LEXIS 20957, at **7-8 (D.S.C. Mar. 17, 2008).

It is true that courts have used language that "claims" themselves are barred by workers compensation exclusivity, but, as Judge Childs has recognized, such cases almost always involve relief sought that is always within the purview of the WCA. *Hand v. SunTrust Bank, Inc.*, Civ. Action No. 6:11-cv-00501-JMC, 2012 U.S. Dist. LEXIS 124947 at **6-7 (D.S.C. Sep. 4, 2012).[6]

---

[5] Even the "exceptions" to workers compensation exclusivity show that the provision only encompasses compensation for injuries. *See Cason v. Duke Energy Corp.*, 348 S.C. 544, 560 S.E.2d 891, 893 (S.C. 2002) (noting exceptions for: (1) where the **injury** results from the act of a subcontractor who is not the injured person's direct employer; (2) where the **injury** is not acc*id*ental but results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations).

[6] There are, of course, certain claims where the only relief that could be sought is personal. In *Phillips v. Shaw Consructors*, for example, Judge Hodges also recognized the distinction between claims and damages, but also recognized that there was "no authority for the proposition that assault or battery claims can result in any injury other than personal injury." *Phillips v. Shaw Constructors, Inc.*, No. 0:12-532-CMC-SVH, 2012

In sum, controlling case law and the statute itself makes clear that the touchstone of exclusivity is the relief sought, and not the cause of action or claim itself. Both the negligence claims and the intrusion claim are specifically pled to make clear that the WCA does not cover them.

### 1.     Counts VIII-X:  The negligence claims

Luxor Scientific is simply wrong that negligence claims are always barred by the WCA. [Motion at 2-6]. In *Hand*, Judge Childs rejected that argument and correctly noted that the focus is on the relief sought, and not on the claim. She specifically held that a negligence claim was not barred because the damages sought resulted from the termination of employment, and not from any personal injury. 2012 U.S. Dist. LEXIS 124947 at ** 5-7; *see also Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538, 540 (S.C. 1992) (holding that, if the employer's alleged negligence was the proximate cause of injury arising from the slanderous conduct of plaintiff's co-employee, then the plaintiff's negligent supervision claim was not barred by the Act).

Here, along with the specific allegations of harm described below, Plaintiff has pled the types of non-personal injury harms for which she is seeking relief as to Luxor Scientific, including the damages for termination of employment recognized in *Hand*:

> 66.     Luxor Scientific's actions interfered with and eliminated the possibility of Plaintiff succeeding as to the business she had been attempting to develop.  These actions adversely affected Plaintiff's earnings, as well as her reputation in her field.

---

U.S. Dist. LEXIS 184574, at *8 (D.S.C. Oct. 31, 2012).  Plaintiff did not include Luxor Scientific in the assault or the battery claim.

> 67. Luxor Scientific's suspension of Plaintiff also affected her relationships with colleagues, further affecting her standing and reputation in her field.
>
> 69. Defendants compensated Plaintiff on an incentive basis. Plaintiff's ability to meet the earnings goals she set with List was dependent on List working professionally with her and her ability to pursue and develop leads, to remain informed of what was happening in the company, to visit with accounts.
>
> 70. As a result of . . . Luxor Scientific's decision to remove job responsibilities from her and to shun her, Defendants severely limited Plaintiff's ability to earn income and to build a clientele, all of which significantly affected both her actual and her potential income.

[DE 14].

Plaintiff also has provided specific requests for relief showing that, as to Luxor Scientific, she is not seeking damages within the purview of the South Carolina Workers Compensation Commission.  In Count VIII (Negligent Supervision and Gross Negligence)**, for example,** Plaintiff specifically alleges:  Luxor Scientific's actions have also caused injuries of a nonpersonal nature, such as lost wages and employment opportunities. [*Id.* ¶ 117].  In the ad damnum clause, Plaintiff makes clear that she is seeking "damages of a nonphysical/non-personal nature such as lost earnings."  These damages simply are not for personal "injuries" for which the South Carolina Workers Compensation Commission could award benefits.

Likewise, in Count IX (Negligent Retention and Gross Negligence)**,** Plaintiff alleges: "Luxor Scientific's actions have also caused injuries of a nonpersonal nature, such as lost wages and employment opportunities" [*id.* ¶ 121], and the relief sought is specifically limited to "damages of a non-physical/personal nature such as lost earnings." Again, the South Carolina Workers Compensation commission has no jurisdiction to award such relief.

Finally, in Count X (Negligent Investigation and Gross Negligence), Plaintiff also alleges that "The manner in which Luxor failed to appropriately investigate and remediate List's harassment caused damage to Plaintiff's reputation and her working relationships, both with regard to her colleagues and as to customers." [*Id.* ¶ 124]. Reputational damages, for example, are not personal injuries subject to the exclusivity principle. *Dockins I*, 306 S.C. at 288-89, 411 S.E.2d at 438. Consistent with *Hand*, Plaintiff has also alleged that "Luxor Scientific's actions ultimately led to her constructive discharge, which has resulted in additional economic damages," and that they "have also caused injuries of a nonpersonal nature, such as lost wages and relocation expenses." [Amended Complaint ¶¶ 125-16; see also ad damnum clause (seeking "injuries of a nonphysical/non personal nature such as lost earnings")].

### 2. Count VII: Invasion of Privacy

Luxor Scientific claims that *Dickert* bars all claims of invasion of privacy. [DE 19 at 6 (citing *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993)). While West Publishing's fourth headnote[7] might suggest that result, the text of the decision dictates the opposite conclusion. The *Dickert* Court made clear that its decision in that case was based on the damages pled in that case, and that it was not finding that the claim was always barred:

> We recognize that certain invasion of privacy claims alleging a proprietary loss **do fall outside the scope of the Act**. However, under the facts here, where Employee alleges emotional harm, we find that the

---

7  4. **Workers' Compensation** ⚖=2088
    Claimant's invasion of privacy claims were of personal nature and, therefore, were within scope of Workers' Compensation Act, and Act was claimant's exclusive remedy. Code 1976, § 42-1-10 et seq.

invasion of privacy claim is of a personal nature and, therefore, encompassed by the Act.

*Dickert*, 311 S.C. at 222, 428 S.E.2d at 702 (emphasis added).

In short, this claim must be analyzed like every other claim. The focus must be on the damages sought and not the name given to the cause of action. Once Again, Luxor Scientific's effort to not shine light on the actual allegations betrays its Motion. The Amended Complaint states:

> [T]he invasion of privacy resulted in economic injury in that Plaintiff's failure to accede to the intrusion resulted in lost compensation and damages from the termination of employment, both of which were proximately caused by the actions complained of herein. As to Luxor Scientific only, Plaintiff does not seek damages for personal injuries with regard to this claim.

[Amended Complaint ¶ 112].

Because the invasion of privacy claim does not involve personal injury as to Luxor Scientific, its Motion fails here as well.

**B.    Luxor Scientific's arguments on existence of a negligent investigation claim**

Luxor Scientific's Motion also should be denied because Luxor Scientific again ignores Plaintiff's pleading as to the duty element of the negligence claim. Instead, Luxor Scientific argues generally that the common law does not impose a duty to investigate. [Motion at 6-9]. Plaintiff has specifically alleged, however, that Luxor Scientific's duty arises because of its undertaking, which Luxor Scientific ignores. [Amended Complaint ¶ 123].

Under the common law of South Carolina, duties arise in one of two ways: (1) They are imposed at law (which is what Luxor Scientific's case law discusses); or (2) they are imposed because a defendant undertook to perform an act. *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) ("The common law ordinarily imposes no duty

11

on a person to act. If an act is voluntarily undertaken, however, the actor assumes the duty to use due care.") (citations omitted).  The South Carolina Supreme Court has explained:

> The recognition of a voluntarily assumed duty in South Carolina jurisprudence is rooted in section 323 of the Restatement (Second) of Torts (1965), which provides:
>
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>>
>> (a) his failure to exercise such care increases the risk of such harm, or
>>
>> (b) the harm is suffered because of the other's reliance upon the undertaking.
>
> Under section 323, the voluntary undertaking does not create a duty of care unless (a) the undertaker's failure to exercise reasonable care in performing the undertaking increased the risk of harm to the plaintiff, or (b) the plaintiff suffered harm because she relied upon the undertaking.

*Wright v. PRG Real Est. Mgmt.*, 426 S.C. 202, 213, 826 S.E.2d 285, 290-91 (2019).

Plaintiff specifically alleges: "Regardless of whether the common law generally imposes a duty regarding investigations of workplace issues, Luxor Scientific undertook to fairly investigate and address List's conduct, inducing Plaintiff to disclose sensitive information and to expose herself further to the wrath of List."  [Amended Complaint ¶ 123].  Because Luxor Scientific's Motion does not even address duties imposed by an undertaking, the Motion must be denied.  Luxor Scientific also should not be permitted to effectively amend its Motion and argue the actual issue for the first time on reply. [8]

---

[8]   Arguments raised for the first time in a reply memorandum are deemed to be waived and should not be considered.  *Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th

### C.     Luxor Scientific's "duplicative claim" argument

Luxor Scientific makes a novel argument that, if allegations of sexual harassment can be redressed under Title VII, then attendant negligence and invasion of privacy claims under South Carolina law must be dismissed at the pleading stage. If the argument had merit, one would assume that there are legions of cases standing for that proposition. This is hardly the first lawsuit in which an employer has been sued in both tort and under Title VII.

The black letter law is that "plaintiffs alleging workplace harassment often can resort to various common-law claims in addition to their statutory discrimination claims." Gilbert Casellas & Diane M. Soubly, Workplace Harassment Law 23-2 (Bloomberg Law 2d ed. 2018) [Exh A]. Luxor Scientific's attempt to stitch together inapplicable legal doctrines simply falls way short.

Luxor Scientific's reliance on the state-law principle in *Dockins v. Ingles Mkts.*, 306 S.C. 496, 413 S.E.2d 18 (1992) ("*Dockins II*") illustrates one conceptual flaw with its argument. In *Dockins II*, the plaintiff tried to create a common law retaliation claim for the

---

Cir. 2008); *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006); *Bouchard v. Synchrony Bank*, No. 2:16-cv-1713-PMD, 2016 U.S. Dist. LEXIS 91327, at *7 (D.S.C. July 14, 2016); *Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc.*, No. 6:13-1067-HMH, 2013 U.S. Dist. LEXIS 158701, at *12 (D.S.C. Nov. 6, 2013). This is to ensure that a moving party is not rewarded for sandbagging – withholding an argument until the non-movant has no opportunity to respond. *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996). *See also, Jones v. Slay*, 61 F. Supp. 3d 806, 823 n.5 (E.D. Mo. 2014) (on summary judgment, the moving party must "cite case law to support his arguments in the memorandum in support of his summary judgment motion, as opposed to waiting to offer support in his reply memorandum. The latter smacks of sandbagging."); *Weems v. Hodnett*, No. 10-cv-1452, 2011 U.S. Dist. LEXIS 75172, at *2-3 (W.D. La. July 13, 2011) ("[T]t is improper for the movant to sandbag and raise wholly new issues in a reply memorandum.")

13

exercise rights created under a statute that prov*id*ed its own remedy for retaliation.  The holding of *Dockins II* is simple: "When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy."  *Id.* at 498, 413 S.E.2d at 19.

Plaintiff is not bringing a common law claim to redress violation of a statute. Rather, she has asserted common law claims to redress violations of the common law. Neither the invasion of privacy claim, nor the negligence claims require any reference to Title VII, or any other statute.  Likewise, the rights conferred by Title VII are not a predicate for Plaintiff's claim as was the FLSA in *Dockins II*.

The doctrine Luxor Scientific attempts to skirt is "preemption," as that is the only preclusive doctrine that could apply.  Even in the context of federal employment, however, Title VII has no preemptive effect as to state law claims.  *Charlot v. Donley*, No. 3:11-579-MBS-SVH, 2012 U.S. Dist. LEXIS 111620, at *13 (D.S.C. Aug. 9, 2012).[9]

Luxor Scientific then mis-states other authority.  The only state law claim subject to the referenced motion in *Menton v. Nestle Frozen Food Co.*[10] was a public policy wrongful discharge claim (*i.e.*, a Ludwick claim)[11] in which the damages sought related to the termination of employment.  *Menton*, 7:14-cv-02542-JMC, DE 6 & 6-1 (filed 6/23/14).[12]

---

[9]     As discussed in *Charlot*, there is authority that Title VII preempts federal tort claims.  *See Pueschel v. United States*, 369 F.3d 345 (4th Cir. 2004).

[10]    Civil Action No. 7:14-2542-JMC-KFM, 2015 U.S. Dist. LEXIS 29724, at *11 (D.S.C. Jan. 23, 2015), *adopted*, 2015 U.S. Dist. LEXIS 28956 (D.S.C., Mar. 10, 2015)

[11]    *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985).

[12]    The Motion in *Menton* makes clear that it was seeking to dismiss Counts I-III. [DE 6].  Counts I and II were Title VII claims. [DE 1-7 at 7].   Count III was a claim for wrongful discharge. [Id. at 7-8].  This Court may take judicial notice of the pleadings from *Menton*. *Holmes v. Haynsworth Sinkler Boyd, P.A. (In re Holmes)*, No. 2:20-00234-BHH-MHC,

Your Honor explained that *Ludwick* prov*ide*s a remedy only where there is no other remedy for the termination. *Menton*, 2015 U.S. Dist. LEXIS 28956, at *17. Judge Childs agreed that a *Ludwick* claim cannot be based on an alleged Title VII violation. 2015 U.S. Dist. LEXIS 28956, at *17 (D.S.C. Mar. 10, 2015). There is no Ludwick claim here, and there were no negligence or invasion of privacy claims at issue in *Menton*. Nor was there any Title VII claim of hostile environment or q*uid pro quo* liability under Title VII at issue in *Menton*.

Luxor Scientific's effort to apply *Ludwick* law to negligence and invasion of privacy claims simply ignores the different standards that apply. Certain claims under the common law of South Carolina exist only in the absence of another remedy. As noted in *Menton*, one is a *Ludwick* claim. There also is caselaw that intentional infliction of emotional distress might be subject to dismissal if another claim (common law or statutory) prov*ide*s a remedy from the same defendant. *E.g.*, *Dotson v. Avon Prods.*, Civ. Action No. 3:10-881-CMC-JRM, 2011 U.S. Dist. LEXIS 25941, at *18 (D.S.C. Feb. 8, 2011).[13] Unlike *Ludwick* and intentional infliction claims, however, negligence and invasion of privacy claims have never been precluded by the existence of other remedies.

---

2021 U.S. Dist. LEXIS 169039, at *1 (D.S.C. Sep. 7, 2021); *Bey v. Ziegler*, No. 2:17-cv-2434-RMG-MGB, 2017 U.S. Dist. LEXIS 175145, at *1 (D.S.C. Sep. 25, 2017); Fed. R. Evid 201(b)(2).

[13]     Until recently, South Carolina courts have held that a conspiracy claim had to allege damages that were distinct from other claims in the case, which likely is no longer the rule. *Paradis v. Charleston Cty. Sch. Dist.*, ___ S.C. ___, 861 S.E.2d 774, 781 (2021).

15

Luxor Scientific swings and misses again with its reliance on *Mack v. House of Hope of the Pee Dee*.[14] *Mack* has nothing to do with either Rule 12 or whether claims of negligence are within the exclusive remedy of Title VII. Luxor Scientific misleadingly cites *Mack* for the proposition that "common law claims for negligent retention, negligent supervision, IIED, and wrongful termination were barred because the plaintiff could pursue statutory remedies under the SCWCA and under the ADA." [DE 19-1 at 10].

That is not what Judge Hendricks said in *Mack*. Rather, she held: (1) that it is the WCA that barred the negligence claims in that case; and (2) that the principle in *Dockins II* barred the wrongful discharge claim. The *Mack* Court never said that the negligence claims were barred by the principle in *Dockins II*. Nor does any other case, which is why Luxor Scientific cannot cite one.

Luxor Scientific does not even attempt to argue that *New v. Belk Stores*[15] or *Nettles v. Techplan*[16] involve tort claims and sex harassment Title VII claims. That the FLSA prov*ide*s a remedy for other types of claims is simply immaterial here.

In a footnote, Luxor Scientific takes us out West to Texas and California for cases that do not involve South Carolina law. [DE 18-1 at 10 n. 6]. *Moyer v. Jos. A. Bank Clothiers, Inc.*,[17] makes clear that both it and *Howe*,[18] to which Luxor Scientific also cites,

---

[14]     Civil Action No. 4:13-cv-2887-BHH-TER, 2015 U.S. Dist. LEXIS 33946, at *8 (D.S.C. Jan. 13, 2015)

[15]     2000 U.S. Dist. LEXIS 23522, at *6-8 (D.S.C. Oct. 5, 2000).

[16]     704 F. Supp. 95, 100 (D.S.C. 1988).

[17]     Civil Action No. 3:11-CV-3076-L, 2013 U.S. Dist. LEXIS 116762, at *58 (N.D. Tex. Aug. 19, 2013)

[18]     *Howe v. Yellowbook*, USA, 840 F. Supp. 2d 970, 980 (N.D. Tex. 2011)

are preemption cases. Texas courts have held that their state law is preempted by Title VII. *Moyer*, 2013 U.S. Dist. LEXIS 116762, at *59. That is not the rule for South Carolina. Finally, *Shanks v. Abbott Labs.*,[19] is the biggest stretch yet. That case is specifically grounded in interpretations of the exclusivity effect of California's fair employment law on California tort law. 2016 U.S. Dist. LEXIS 95502, at ** 33-34.

If Title VII supplanted South Carolina tort law as Luxor Scientific claims, it would not be citing unreported decisions from places like the Northern District of California to draw analogies. Neither this Court nor the Fourth Circuit has ever reached the conclusion Luxor Scientific argues is somehow established. For this reason alone, Luxor has failed to meet its burden.

## IV.  Conclusion

For the foregoing reasons, Luxor Scientific's Motion must be denied.

Respectfully submitted this 27th day of November 2021.

                                                  s/ Brian P. Murphy
                                                  Brian P. Murphy, Fed. I.D. No. 6405
                                                  Attorney for Plaintiff.

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400
Fax: (864) 240-9292
brian@stephensonmurphy.com

---

[19]    2016 U.S. Dist. LEXIS 95502, at *33 (N.D. Cal. July 21, 2016).